**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**GOLOMB & HONIK**
Kenneth Grunfeld (to apply *pro hac vice*)
1835 Market St., Suite 2900,
Philadelphia, PA 19103
kgrunfeld@golombhonik.com
Tel: (215) 985-9177
Fax: (215) 985-4169

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEY PARSONS AUGHTMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YES TO INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-1223<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violations of Consumer Legal Remedies Act (CLRA) California Civil Code §§ 1750, *et seq.*<br><br>2. Violations of False Advertising Law (FAL) Cal. Bus. & Prof. C. §§ 17500, *et seq.*<br><br>3. Violations of Unfair Competition Law (UCL) 'Unfair' and 'Fraudulent' Prongs Cal. Bus. & Prof. C. §§ 17200, *et seq.*<br><br>4. Violations of Unfair Competition Law (UCL) 'Unlawful' Prong *Cal. Bus. & Prof. C.* §§ 17200, *et seq.*<br><br>5. Breach of Implied Warranty of Merchantability<br><br>6. Breach of Implied Warranty of Fitness for a Particular Purpose<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Josey Parsons Aughtman, through undersigned counsel, files on behalf of herself and all persons similarly situated, this Class Action Complaint, alleging the following based on personal knowledge, investigation of counsel and review of public documents, among other things, as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.    This class action complaint seeks to remedy the unlawful and deceptive practices by Yes To Inc. (hereinafter "Yes To"/"Defendant") in connection with the marketing, packaging, and sale of its beauty product, "Yes to Grapefruit Vitamin C Glow-Boosting Unicorn Paper Mask" (hereinafter "the Product" or "Unicorn Mask"), which has been sold in big-box retailers throughout the country.

2.    Despite Defendant' claims that it is a "global leader in natural beauty products" and that the Unicorn Mask will leave your skin "bright" and "glowing" with a "naturally more even-looking complexion," the Product—which is marketed to target young women and girls—is dangerous and has harmful side effects.

3.    Specifically, when the Product is purchased and subsequently used by unsuspecting customers in accordance with Defendant's instructions for use, it results in injuries including, but not limited to, severe facial skin irritation, redness, burning, blistering, swelling and pain.

4.    Yes To has been on notice of the serious adverse side-effects caused by the use the Unicorn Mask. Not only has the flood of consumer complaints (accompanied by photos of users' burned faces) been publicized in the media, but Yes To has also tacitly acknowledged the issue and attempted to address it. Namely, Defendant's webpage for the Unicorn Mask has sporadically stated that the Product had been "discontinued" due to "reports of skin irritation," and advised purchasers to return the Product or call Yes To directly if it had been used.

5.    Incredibly—although woefully insufficient to address the problem—these statements appeared for about 14 days, then disappeared, then re-appeared on

Defendant's website. Yet the Product is, and always has been, falsely advertised on the Yes To website and remains on store shelves for purchase without any sort of notification or warnings about the harm it can cause.

6. Despite being on notice and fully aware of the harm being caused by the Unicorn Mask and that it does not deliver the promised benefits, Yes To has: (a) failed to provide any disclosure about the harm on the Product or at the point of purchase; (b) periodically removes the hidden, small print information about reports of skin irritation and a purported discontinuance of the Product from its website; (c) failed to recall the product or otherwise notify retailers to remove it from store shelves; (d) continues to omit material facts and make false statements about the benefits of the Product on its website and on the Product packaging.

7. Accordingly, Plaintiff, for herself and all others similarly situated, brings this action to address Yes To's fraudulent, unfair and unlawful marketing practices and breaches of warranty, and seeks injunctive relief, including compelling Defendant to recall the Product and permanently refrain from labeling, selling, marketing and advertising the Product with the misrepresentations and material omissions alleged herein. Plaintiff also seeks restitution and damages to remedy the harm to Plaintiff and the class of consumers that she seeks to represent.

## JURISDICTION AND VENUE

8. Jurisdiction and venue are properly vested in this Court because a substantial portion of the acts, events, and/or failure to act giving rise to the claims alleged herein occurred in this judicial district. In addition, the Defendant's principal place of business is in Pasadena, California.

9. This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C.§1332 (CAFA). Jurisdiction is vested in this Court in that the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and this is a proposed nationwide class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

10.    Venue is proper in this District under 28 U.S.C. § 1391(a)(1), because Yes To is "domiciled" in this jurisdiction, regularly conducts business in this District and the significant events giving rise to this case took place in this District.

## PARTIES

11.    Plaintiff, Josey Parsons Aughtman is a purchaser of the Product who resides in Montgomery, Alabama.

12.    Defendant Yes To Inc. is a Delaware Corporation headquartered in Pasadena, California. It is a leading provider of purportedly 'natural' beauty products that can be found in over 27,000 big-box stores across the world and throughout the United States. All of the unlawful decisions, practices, policies, deceptive marketing, advertising and product information were conceived, reviewed, developed or otherwise controlled from and emanated from Yes To's California headquarters. All of the injuries that were caused by Yes To's wrongful conduct arise from decisions that originated in California.

## FACTUAL ALLEGATIONS

13.    The Unicorn Mask is part of a growing global market for facial sheet masks, which are face-shaped sheets with cutouts for the eyes, nose, and mouth. The masks are available in different sheet materials, including non-woven, cotton, hydrogel, bio-cellulose and others. The sheets are soaked in nutrition-packed serums that are supposed to be beneficial to the skin due to the presence of vitamins and minerals.

14.    Sheet masks provide skin therapy or treatment and are customized to address a variety of skin concerns. For example, using the appropriate facial mask can help remove excess oil, hydrate the skins, or improve the appearance of pores, or help remove impurities.

15.    The sheet mask can only be used once, therefore it is individually packaged, making it fast, convenient and easy to use.

16.    The increasing demand for skincare products is driving the growth of the global sheet face mass market and increasing concerns about personal appearance. According to a 2018 market report published by Transparency Market Research titled "Sheet Face Masks Market-Global Industry Analysis, Size, Share, Growth, Trends, and Forecast 2018-2026," the global sheet face mask market was expected to reach a value of $551 million by 2026. Some reports now project the market will approach $ 1 billion over the next several years.

17.    Defendant manufactures, markets, labels, packages, promotes, distributes and/or sells cosmetic products including, but not limited to paper face masks such as the Unicorn Mask at issue.

18.    Yes To is "a global leader in natural beauty products . . . that can be found in over 27,000 stores (from the biggies to the mom and pops) across the world."[1] Those stores include, but are not limited to, CVS, Walgreens, Walmart, Target, Amazon, and Ulta Beauty.

19.    At all times material hereto, Defendant manufactured, supplied, sold and otherwise provided the Product to retail stores throughout the United States.

20.    None of Yes To's products, including the Unicorn Mask are sold directly to consumers by Defendant, and none of Defendant's products, including the Unicorn Mask, are available for purchase on the Yes To website.

21.    The Unicorn Mask is a single use paper mask soaked in grapefruit and vitamin C, among other ingredients.

22.    Defendant claims the Unicorn Mask "will make your skin care fantasies come true, as it helps reveal a bright, glowing, naturally more even-looking complexion."[2] Your skin will look great in selfies with this mask on AND off!"[3]

23.    At all times material hereto, Defendant provided a "How to Use" for the

---

[1] http://yesto.com/our-mission/
[2] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/
[3] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/

Product on Defendant's website, which stated to "gently unfold mask and apply to clean skin." Furthermore, it stated "Tingling? It's working."

24.    The Unicorn Mask—like all of Defendant's products—are marketed to target young women and girls. The packaging for the Yes To line of sheet face masks comes in bright, iridescent colors featuring cartoon-like drawings of young looking girls on the front.  The Unicorn Mask comes in iridescent pink packaging with a drawing of a young girl wearing the mask and a Unicorn Tiara.

25.    Despite the affirmative representations on the Product packaging and core message that the Unicorn Mask is safe for use and that using it will result in a better overall facial complexion, the Product is dangerous and has harmful side effects that make users' faces look terrible and cause physical pain.

26.    Consumers of the Unicorn Mask throughout the Country have experienced serious side effects, including severe facial skin irritation, redness, burning, blistering, swelling and pain.

27.    Yes To is, and has been, on notice of the serious adverse side-effects caused by the Unicorn Mask.  Indeed, consumer complaints about severe skin irritation caused by using the Product are rampant online and have been well-publicized in the media.

28.    In fact, in apparent response to consumer complaints (and unbeknownst to Plaintiff), on or about January 4, 2020, Defendant claimed to have discontinued the Product due to customers suffering from "skin irritation" as a result of using the Product.[4]

29.    Defendant's supposed discontinuation of the Product consisted of a short-lived singular post on its Twitter account, a singular post on its Facebook page and a brief description on the Product page on Defendant's website.[5]

30.    The information about the "discontinuation" of the Product on the Yes To

---

[4] https://twitter.com/yesto/status/1213526413644419072
[5] http://yesto.com/product/yes-to-grapefruit-unicorn-paper-mask/

website could only be found by clicking on the Unicorn Mask product page and reading the fine print underneath the product description. Once there, it stated that the Product had been discontinued due to reports of "skin irritation" and that purchasers should return the Product if they had not used it yet, or call Yes To directly if the Unicorn Mask had been used.

31.    Shockingly, at various times and least between January 21, 2020 and January 29, 2020, there was no mention of any discontinuance of the Unicorn Mask on Defendant's website.

32.    Defendant also never recalled the Product or otherwise notified retailers to remove it from store shelves.

33.    Defendant continues to omit material facts and make false statements about the benefits of the Product on its website and on the Product packaging.

34.    Defendant's deceptive marketing and failure to disclose material facts, and sporadic, minimal effort to "notify" consumers of the dangers of the Product while continuing to market it as available at dozens of major retailers across the country violates California law. Defendant's failure to recall the Product or otherwise notify retailers to remove it from store shelves further violates California law.

**Plaintiff's Experience with the Product**

35.    On January 8, 2020, Plaintiff, Josey Parsons Aughtman, in reliance on the claims on the Product packaging and reasonably believing the product was safe for use, purchased the Unicorn Mask at CVS located at 55 Ray Thorington Road, Montgomery, AL 36116.

36.    On January 8, 2020, Plaintiff used the Product in accordance with Defendant's instructions for use by gently applying the Unicorn Mask to her clean skin. Plaintiff experienced painful burning while the Unicorn Mask was on her face. After she removed it, she saw that her face had become severely red and swollen as a result of using the Unicorn Mask. Below are photographs depicting Plaintiff's face after using the Unicorn Mask:



37.    Plaintiff believes and therefore avers that thousands of purchasers of the Product have had similar experiences with the Product as that of Plaintiff.

38.    On January 17, 2020 Plaintiff contacted Yes To  at the provided phone number on the Yes To website to discuss the damage to her skin resulting from using the Unicorn Mask. She left a voice message as instructed. Plaintiff did not receive a response from Yes To.

## CLASS ALLEGATIONS

39.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other persons similarly situated. The class is defined as all consumers who purchased the Product within the statute of limitations (the "Class").

40.     Excluded from the Class are Defendant, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, counsel for the Plaintiff in this matter, and the Court personnel in this matter.

41.    Plaintiff reserves the right to modify or amend the definitions of the

proposed class before the Court determines whether certification is appropriate.

42.   Members of the Class were uniformly impacted by and exposed to Defendant's misconduct. Accordingly, this Complaint is suitable for class-wide resolution.

43.   This action is brought and properly may be maintained as a Class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(l), (b)(2) or (b)(3), and satisfies the requirements thereof.

### Rule 23(a) Requirements

44.   The Classes satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

45.   **Numerosity:** The proposed class is so numerous that joinder of all members would be impracticable.  Defendant's products can be found at over 27,000 retail location throughout the world and United States. The precise number of class members is at least in the thousands, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of the action as a class action.

46.   **Commonality:** Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class is identical. Defendant's uniformly, through retail locations, supplied and sold the Product to the Class.

47.   Plaintiff shares a common interest with all members of the putative class in the objectives of the action and the relief sought.

48.   Because the Product packaging and Defendant's marketing and deceptive conduct was uniform, the material elements of Plaintiff's claims and those of class members are subject to common proof, and the outcome of Plaintiff's actions will be dispositive for the class.

49.    Questions of law and fact that are common to the class include, but are not limited to, the following:

    a.  Whether Yes To violated <u>California Business and Professions Code</u> section 17200, *et seq.*;

    b.  Whether Yes To violated <u>California Business and Professions Code</u> section 17500, *et seq.*;

    c.  Whether Yes To violated <u>California Civil Code</u> section 1750, *et seq.*

    d.  Whether Plaintiff and the Class are entitled to injunctive relief;

    e.  Whether Plaintiff and the Class are entitled to restitution and/or damages and, if so, how it should be calculated;

    f.  Whether Defendant breached its implied warranty;

50.    **Typicality:**  Plaintiff is a member of the Class she seeks to represent. Plaintiff's claims are typical of the Class member's claims because she purchased the Product and was exposed to Defendant's conduct.

51.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class she seeks to represent and will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent her and the Class.  There are no conflicts between Plaintiff and the unnamed class members.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

52.    To prosecute this case, Plaintiff has chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

53.    Specifically, the undersigned counsel, Milstein, Jackson, Fairchild & Wade, LLP and Golomb & Honik, P.C., have extensive experience in complex

consumer fraud and class action litigation and have adequate financial resources to ensure that the interests of the prospective class will not be harmed.

### Requirements of Fed. R. Civ. P. 23(b)(3)

54. The questions of law or fact common to Plaintiff and each class member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed class members are based on Defendant's false and deceptive marketing on the packaging of the Product.

55. Common issues predominate when, as here, liability can be determined on a class-wide basis, even if there may be some individualized damage determinations.

56. **Superiority.** A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

   a. Joinder of all class members would create extreme hardship and inconvenience for Class Members as they reside all across the states;

   b. Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake. As a result, individual class members may have no interest in prosecuting and controlling separate actions;

   c. There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

   d. The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

   e. Individual suits would not be cost effective or economically maintainable as individual actions; and

   f. This action is manageable as a class action.

57. The class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants. Class members can be readily

identified using sales records, production records, and other information kept by Defendant and/or third parties in the usual course of business and within their control. Therefore, both the membership of the class and the amount of individual damages will be readily ascertainable.

58.   **Notice:**  Class Members can easily self-identify whether they have purchased the Product and may also be identified by business records of the retail outlets who sell the Product from customer loyalty and rewards programs.  Publication notice may be given to class members in nationwide publications, through the creation of a public website, and other online mediums, such as Facebook, Twitter and other methods Defendant uses to advertise Yes To products.

59.   Plaintiff also satisfies the requirements of Rule 23(b)(2). Specifically, Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class

**FIRST CAUSE OF ACTION**
**Violations of Consumer Legal Remedies Act (CLRA)**
**California Civil Code §§ 1750, *et seq.***

60.   Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

61.   Plaintiff brings this claim under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*., on behalf of herself and the Class, all of whom were subject to Defendant's above-described unlawful conduct.

62.   The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

63.   The CLRA is "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices . . . ." Cal. Civ. Code § 1760.

64.    Plaintiff has standing to pursue this claim as she has suffered injury in fact and lost money as a result of Defendant's actions as set forth herein.

65.    At all times relevant hereto, Plaintiff was and is a "consumer" as defined in California Civil Code § 1761(d), and Defendant was and is a "supplier or seller" as defined by the CLRA.

66.    At all times relevant hereto, Defendant was and is a "person" as defined in California Civil Code § 1761(c).

67.    At all relevant times hereto, Defendant's conduct as described herein involves consumer "transactions" as defined in California Civil Code § 1761(e).

68.    Defendant violated, and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in consumer transactions with Plaintiff and the Class, which were intended to result in, and did result in, the sale of the Unicorn Mask to Plaintiff and the Class:

      a.    In violation of California Civil Code §1770(a)(5), Defendant represented the Product as having characteristics, ingredients, uses, or benefits which it does not have;

      b.    In violation of California Civil Code §1770(a)(7), Defendant representing that the Product is of a particular standard, quality, or grade when it is of another;

      c.    In violation of California Civil Code §1770(a)(9), Defendant advertised its Product with the intent not to sell it as advertised; and

      d.    In violation of California Civil Code §1770(a)(16), Defendant represented the Product has characteristics, uses, or benefits which it does not have.

69.    Defendant's representations and omissions were uniformly made on the Product packaging and the Yes To website, and would be important to reasonable consumers in their purchasing decision.

70.    Plaintiff relied on Defendant's misrepresentations and omissions and would not have purchased the Unicorn Mask if she knew it was unsafe, incapable of delivering any of the promised benefits, and would actually hurt her.

71.    As a direct and proximate result of Defendant's misrepresentations and omissions, Defendant has caused injury to Plaintiff and continues to cause injury Class Members who are misled into purchasing the Unicorn Mask without any warning of the harmful side effects and reasonably believing it was safe for use and would deliver the promised benefits.

72.    Defendant's actions as described herein were done with the intention of deceiving Plaintiff and the Classes and depriving them of their legal rights and money.

73.    Defendants' actions as described herein were done with conscious disregard of Plaintiff and Class Members' rights and Defendants have acted wantonly and maliciously in their concealment of the same.

74.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant continues to falsely and deceptively advertise and sell the Product.

75.    Plaintiff is concurrently filing the declaration of venue required by California Civil Code § 1780(d).

76.    Pursuant to California Civil Code § 1780(a), Plaintiff seeks injunctive relief, including compelling Defendant recall the Product and permanently refrain from labeling, selling, marketing and advertising the Product in the future with the misrepresentations and material omissions alleged herein. Plaintiff and members of the Class shall be irreparably harmed if such an order is not granted.

77.    Concurrent with the filing of this complaint Plaintiff is sending Defendant notice advising Defendant it violated and continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complies in all respects with Section 1782 of the CLRA. Plaintiff sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiff's Notice advised

CLASS ACTION COMPLAINT

Defendant it must correct, repair, replace or otherwise rectify its conduct and the product alleged to be in violation of Section 1770, including that Defendant recall the Product and refrain from labeling, selling, marketing and advertising the Unicorn Mask in the future with deceptive representations and material omissions, and provide corrective advertising and restitution to its customers who paid money to Defendant for the Product. Plaintiff further advised Defendant that if it fails to respond to Plaintiff's demand within thirty (30) days of receipt of this notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiff will amend this complaint to seek damages and punitive damages under this cause of action.

## SECOND CAUSE OF ACTION
### Violations of False Advertising Law (FAL)
### *Cal. Bus. & Prof. C.* §§ 17500, *et seq.*
### (On Behalf of the Class)

78.    Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

79.    Plaintiff, on behalf of herself and the Class, brings a cause of action against Defendant pursuant to California Business and Professions code, section sections 17500, et seq. ("California's False Advertising Law" or "FAL").

80.    The purpose of California's False Advertising Law is to protect consumers from false or misleading advertising or promotions.  The FAL prohibits the false or deceptive advertising of products to consumers in any form of media, when the company placing the advertisement knows, or should have known, that the advertisement would be likely to mislead consumers about a material aspect of a product.

81.    As alleged hereinabove, Plaintiff has standing to pursue this claim as she has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased the Unicorn Mask for her own personal use.  In so doing, she relied upon the representations and omissions referenced above and believed the Unicorn Mask

was safe for personal use and would deliver the promised benefits. At the time she purchased the product and used it, Plaintiff was not aware of its harmful side effects.

82. In advertising the Unicorn Mask, Defendant made false and misleading statements in order to induce consumers into purchasing the Product and failed to make material disclosures that the Unicorn Mask has harmful side effects and can harm consumers.

83. Yes To uses advertising on the product packaging, its website and through various outlets (including Facebook and Twitter) to promote its products, including the Unicorn Mask.

84. Defendant's advertising and label claims are deceptive, or misleading within the meaning of the FAL because they make affirmative representations about the promised benefits of the Product, and omit any kind of warning or adequate disclosure of material facts to consumers about the existence and severity of side effects associated with using the Product.

85. In making its product packaging and labeling and disseminating the statements alleged herein, Yes To knew that the statements were untrue or misleading because it sporadically, for short durations, placed on its website (and once on Facebook and Twitter) that it was "discontinuing" the Unicorn Mask because of reports it was harming consumers.

86. Through its deceptive and unlawful marketing practices, Yes To has improperly and illegally obtained money from Plaintiff and the Class.

87. Pursuant to California's False Advertising Law, specifically Cal. Bus. & Prof. Code § 17535, Plaintiff and the Class seek injunctive relief as set forth above and an award of full restitution, and/or for such other relief as may be set forth below or ordered in the discretion of the Court.

//

//

//

CLASS ACTION COMPLAINT

### THIRD CAUSE OF ACTION
### Violations of Unfair Competition Law (UCL)
### 'Unfair' and 'Fraudulent' Prongs
### *Cal. Bus. & Prof. C.* §§ 17200, *et seq.*
### (On Behalf of the Class)

88.    Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

89.    As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Unicorn Mask for her own personal use.  In so doing, she relied upon the representations and omissions referenced above and believed the Unicorn Mask Roundup was safe for personal use and would deliver the promised benefits, and was not aware of its harmful side effects.

90.    Defendant's conduct in labeling, selling, marketing and advertising the Unicorn Mask is likely to deceive reasonable consumers. Indeed, reasonable consumers would not pay money for a face mask that promises to improve your complexion when instead the product actually burns and blisters your face and is incapable of delivering the promised benefits.

91.    Defendant is aware that its conduct is likely to deceive reasonable consumers.

92.    As alleged herein, Plaintiff would not have purchased the Unicorn Mask if she knew the Product would not deliver the promised benefits, would cause her face to burn and become red and puffy as a result of using the product.

93.    The misrepresentations and omissions, conduct and failure to recall by Defendant are material and constitute unfair and fraudulent business practices within the meaning of California Business & Professions Code § 17200, *et seq*.

94.    Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any

countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the injury because Defendant misled the consuming public through misrepresentations and omissions and failed to recall the Product even though they are aware of the harmful side effects.

95. Defendant's business practices are also unfair because their conduct in labeling, selling, marketing and advertising the Product offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Such public policy is tethered to a specific constitutional and statutory provisions, including California's consumer protection statutes.

96. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described above.

97. Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Unicorn Mask is safe for personal use and capable of delivering the promised benefits. Defendant knows its representations and omissions and failure to recall the Product will deceive consumers into purchasing a Product that has harmful side effects and does the opposite of what the product packaging promises.

98. Plaintiff was misled into purchasing the Unicorn Mask by Defendants' deceptive and fraudulent conduct as alleged above.

99. Plaintiff was misled and, because the conduct, including the representations and omissions were uniform and material, believed the Product was safe for personal use and would deliver the promised benefits.

100. Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition since Defendant continues to market and sell the Unicorn Mask in a manner likely to deceive the public.

101. Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court enjoining Defendants from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of the Unicorn Mask.

102.  Additionally, Plaintiff seeks an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair and fraudulent business practices alleged herein.

**FOURTH CAUSE OF ACTION**
**Violations of Unfair Competition Law (UCL)**
**'Unlawful' Prong**
***Cal. Bus. & Prof. C. §§ 17200, et seq.***
**(On Behalf of the Class)**

103.  Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

104.  Defendants' actions, as alleged herein, constitute illegal and unlawful business practices in violation of <u>California Business and Professions Code</u> § 17200, *et seq*.

105.  Defendants are unlawfully labeling, selling, marketing and advertising the Unicorn Mask. Indeed, Defendants' violations of the CLRA, the UCL, and the FAL alleged above, constitute predicate acts which violate the UCL's 'unlawful' prong.

106.  Plaintiff was misled because Defendants' misrepresentations and omissions, described above, were uniform and material. Plaintiff reasonably relied on those misrepresentations and material omissions when purchasing the Product, believing based thereon that the Unicorn Mask was safe for personal use and would work as promised. Plaintiff was not aware the Product would not deliver the promised benefits, and that it would actually hurt her.

107.  Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court enjoining Defendants from engaging in the unlawful business practices alleged herein in connection with the marketing and sale of the Product.

108.  Additionally, Plaintiff seeks an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of the unlawful conduct alleged herein.

# FIFTH CAUSE OF ACTION

## Breach of Implied Warranty of Merchantability
## (On Behalf of the Class)

109.  Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

110. At the time Defendant, manufactured, marketed, labeled, promoted, distributed and/or sold the Product, Defendant knew of the uses for which the Product was intended, including application to the face, and impliedly warranted the Product was merchantable and fit for the ordinary purpose for which it was intended.

111.  Members of the consuming public, including consumers such as Plaintiff and the members of the Class, were intended third-party beneficiaries of the warranty.

112.  The Product was not merchantable or fit for its ordinary purpose because it had the propensity to lead to the injuries described herein.

113.  Plaintiff and the members of the Class reasonably relied on Defendant's representations that the Product was safe for use and would deliver the promised benefits.

114.  Plaintiff was not aware the Product would not deliver the promised benefits, would cause her face to burn and become red and puffy as a result of using the product.

115.  Defendant's breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's and the Class members' injuries described herein.

116.  Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the health and safety of the consumers and users of its products, including Plaintiff and the members of the Class with knowledge of the safety and efficacy problems. Defendant made conscious decisions not to recall, redesign, relabel, warn or inform Plaintiff or the members of the Class or the unsuspecting consuming public.  Defendant's outrageous conduct warrants an award of punitive damages.

117. As a direct and proximate result of Defendant's implied warranties of merchantability concerning the Product, as described herein, Plaintiff and the members of the Class suffered damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

118. Plaintiff took reasonable steps to notify Defendant within a reasonable time that the Unicorn Mask did not have the quality that a buyer would reasonably expect.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty of Fitness for a Particular Purpose
### (On behalf of the Class)

119. Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

120. Defendant manufactured, supplied and sold the Product with an implied warranty that it was fit for the particular purpose for which it was warranted.

121. Members of the consuming public, including Plaintiff and the members of the Class, were the intended third-party beneficiaries of the warranty.

122. The Product was not fit for the particular purpose for which it was warranted without risk of injury, which risk is much higher than other products designed to perform the same function.

123. Plaintiff and Class Members relied on Defendant's representations the Product was safe and effective for application to the face.

124. Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries.

125. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the health and safety of the consumers and users of its products, including Plaintiff and the members of the Class with knowledge of the safety and efficacy problems. Defendant made conscious decisions not to redesign, relabel, warn or inform Plaintiff or members of the Class or the unsuspecting consuming public.

Defendant's outrageous conduct warrants an award of punitive damages.

126. As a direct and proximate result of Defendant's implied warranties of fitness concerning the Product, as described herein, Plaintiff and the members of the Class suffered damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

127. Plaintiff took reasonable steps to notify Defendant within a reasonable time that the Unicorn Mask did not have the quality that a buyer would reasonably expect.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.   An order certifying that the action may be maintained as a Class Action;

B.   An order declaring Defendant's conduct violated the UCL, FAL, CLRA and constituted a breach of implied warranty.

C.   An order enjoining Defendant from pursuing the policies, acts, and practices complained of herein and requiring Defendants to pay restitution to Plaintiff and all members of the Class;

D.   Pre-judgment interest from the date of filing this suit;

E.   Restitution;

F.   Damages as to counts Five and Six;

G.   Punitive damages as to counts Five and Six;

H.   Reasonable attorneys' fees;

I.   Costs of this suit; and

J.   Such other and further relief as the Court may deem necessary or appropriate.

1

## JURY TRIAL DEMANDED

2
Plaintiff demands a jury trial on all triable issues.

3

4
Dated:  February 6, 2020

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**

5

6
By: _____

7
Gillian L. Wade
Sara D. Avila

8
Marc A. Castaneda

9
Kenneth Grunfeld (to apply *pro hac vice*)
**GOLOMB & HONIK**

10

11
*Attorneys for Plaintiff and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

CLASS ACTION COMPLAINT